# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| JOBS FOR DOWNRIVER, JOBS FOR HARPER WOODS, JOBS FOR OAKLAND, JOBS FOR PLYMOUTH, and PROGRESS FOR SALINE, ballot question committees,<br><br>          Plaintiffs,<br>v.<br><br>GRETCHEN WHITMER, in her official capacity as Governor of Michigan, JOCELYN BENSON, in her official capacity as Secretary of State of Michigan, JONATHAN BRATER, in his official capacity as Director of the Michigan Bureau of Elections, CITY OF AUBURN HILLS, CITY OF FLAT ROCK, CITY OF HARPER WOODS, CITY OF PLYMOUTH, CITY OF SALINE, CITY OF WIXOM, LAURA PIERCE, in her official capacity as Auburn Hills City Clerk, MEAGHAN BACHMAN, in her official capacity as Flat Rock City Clerk, LESLIE FRANK, in her official capacity as Harper Woods City Clerk, MAUREEN BRODIE, in her official capacity as Plymouth City Clerk, TERRI ROYAL, in her official capacity as Saline City Clerk, and CATHERINE BUCK, in her official capacity as Wixom City Clerk.<br><br>          Defendants. | Case No. 20-cv-12115<br><br>HON. George Caram Steeh<br><br><br><br><br><br>**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR TRO/PRELIMINARY INJUNCTION** |

Douglas E. Mains (P75351)
Kevin M. Blair (P76927)
Honigman LLP
*Attorneys for Plaintiffs*
222 North Washington Square, Suite 400
Lansing, MI 48933
(517) 377-0716
kblair@honigman.com

## **TABLE OF CONTENTS**

INDEX OF AUTHORITIES ................................................................................... II

STATEMENT OF ISSUES PRESENTED ............................................................ IV

CONTROLLING OR MOST RELEVANT AUTHORITY ..................................... V

        A.     Plaintiffs Have Standing to Bring This Suit ................................ 1

        B.     The Defense of Laches is Inapplicable to This Case. .................. 1

        C.     Plaintiffs are Likely to Succeed On the Merits of Their Case. 3

# INDEX OF AUTHORITIES

## Cases

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...................................................... 9, 16

*Brown-Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 206 F.3d 680 (6th Cir. 2000) ............................................................................ 6

*Burdick v. Takushi*, 504 U.S. 428 (1992) ............................................................. 9, 16

*Detroit Unity Fund v. Whitmer,* No. 4:20-CV-12016 (E.D. Mich. filed July 28, 2020) ................................................................................................................ 6, 7, 8

*Durham v. Martin*, 905 F.3d 432 (2018) ..................................................................... 5

*Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154 (E.D. Mich. April 20, 2020) ................................................................................... v, 3, 12, 13

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) ................................................ 15

*Kishore v. Whitmer*, No. 20-11605, 2020 WL 3819125 (E.D. Mich. July 8, 2020) ................................................................................................................. 1, 16, 17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555; 112 S.Ct. 2130; 119 L.Ed.2d 351 (1992) ..................................................................................................................... 6

*SawariMedia LLC v.* Whitmer, No. 20-CV-11246, 2020 WL 3097266 (E.D. Mich. June 11, 2020) ................................................................................................ v, 14

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83; 118 S.Ct. 1003; 140 L.Ed.2d 210 (1998) ................................................................................................ 5

*Thompson v. DeWine*, 959 F.3d 804 (6th Cir. 2020) ........................... 11, 12, 14, 15

## Statutes

Home Rule City Act .................................................................................................... 5

Mich. Comp. Laws § 168.646a(2) .......................................................................... 5, 7

Mich. Comp. Laws §§ 117.1 *et seq.* ........................................................................... 5

Mich. Comp. Laws §§ 333.27951 *et seq.* ................................................................... 5

Michigan Regulation and Taxation of Marihuana Act .............................................. 5

## Other Authorities

*Emagine Royal Oak Film Festival Postponed After Attorney General Threatens Charges*, WWJ News Radio 950 (June 18, 2020), https://wwjnewsradio.radio.com/articles/news/mich-ag-sends-letter-warning-emaginetheaters-not-to-open .................................................................................. 15

## **STATEMENT OF ISSUES PRESENTED**

1. Whether the doctrine of laches applies so as to bar Plaintiffs' claims.

2. Whether Plaintiffs have demonstrated a likelihood of success on the merits by establishing that the burden upon their First Amendment rights is severe under the *Anderson-Burdick* framework.

## **CONTROLLING OR MOST RELEVANT AUTHORITY**

1. *Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1910154 (E.D. Mich. April 20, 2020).

2. *SawariMedia LLC v.* Whitmer, No. 20-CV-11246, 2020 WL 3097266 (E.D. Mich. June 11, 2020)

### A.     Plaintiffs Have Standing to Bring This Suit

Defendants aver that Plaintiffs may not have standing to bring this suit as Plaintiffs did not file their petitions with Defendant Cities on or before the statutory deadline . It is well-settled that, in order to have standing, "a plaintiff must show injury in fact, causation, and redressability." *Durham v. Martin*, 905 F.3d 432, 433 (2018) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103; 118 S.Ct. 1003; 140 L.Ed.2d 210 (1998)). An "injury in fact" is "a concrete and particularized, actual or imminent invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 555; 112 S.Ct. 2130; 119 L.Ed.2d 351 (1992). Here, Plaintiffs unquestionably suffered a concrete and particularized harm, as the strict enforcement of signature requirements and statutory filing deadlines, in conjunction with Governor Whitmer's executive orders, denied them the opportunity to present their local ballot initiatives to the electorate. Moreover, the argument that Plaintiffs lack standing for not filing their petitions with the Defendant Clerks is entirely inconsistent with Defendants' arguments that Plaintiffs should have filed this case sooner, which would necessarily have required them to file prior to submission.

### B.     The Defense of Laches is Inapplicable to This Case.

In *Detroit Unity Fund v. Whitmer,* No. 4:20-CV-12016 (E.D. Mich. filed July 28, 2020), Judge Dawkins Davis found that the doctrine of laches was applicable to plaintiffs' case. Plaintiffs' case is distinguishable, as Defendants cannot satisfy both

1

prongs of the test for laches, as there would likely be no prejudice to Defendants if relief were granted in this case.

In *Detroit Unity Fund*, the plaintiffs were seeking a 30-day extension, allowing them to submit signatures through August 28, 2020. Judge Dawkins Davis found that such an extension "would likely delay ballot finalizing and printing for both the City of Detroit and Wayne County." Order Den. Emergency Mot. For TRO &/or Prelim. Inj., *Detroit Unity Fund,* No. 4:20-CV-12016 (E.D. Mich. Aug. 17, 2020).

In the instant case, the Court could likely grant Plaintiffs relief without delaying ballot printing. The number of signatures required for Plaintiffs' proposals to be placed on the ballot is relatively small, ranging from 303 signatures in Wixom to 1,551 signatures in the Auburn Hills. By contrast, in *Detroit Unity Fund*, the ballot question committee was required to submit approximately 10,000 valid signatures with the Detroit City Clerk.

By the time of the hearing on Plaintiffs' motion, Plaintiffs believe that they will have obtained sufficient valid signatures for inclusion on the ballot in most, if not all, of the Defendant Cities. If this Court were to grant relief as of the date of the hearing on Plaintiffs' motion, whether by extending the submission deadline or by reducing the number of required signatures, Plaintiffs would largely be able to submit sufficient valid signatures to initiate their proposals immediately. As opposed

to canvassing more than 10,000 signatures in the City of Detroit, Defendants should be able to accomplish the relatively small numbers in the instant case rather quickly, without causing significant delays to the ballot proofing and printing process.

**C.    Plaintiffs are Likely to Succeed On the Merits of Their Case.**

Plaintiffs began circulating their petitions in July 2020, well after Governor Whitmer's Stay-at-Home Order was lifted on June 1, 2020. However, this timeframe was entirely reasonable under the circumstances. First, Plaintiffs were effectively foreclosed from signature gathering activities from mid-March through June 1, 2020 due to the Stay-at-Home Order.[1]

Second, Governor Whitmer's rescinding the Stay-at-Home Order on June 1, 2020 was entirely unexpected. The Governor's first Stay-at-Home Order went into effect on March 24, 2020. The original Stay-at-Home Order was scheduled to last through April 14, 2020. Thereafter, the Stay-at-Home Order was repeatedly extended, first through May 1, 2020, then subsequently through May 13, 2020, May 28, 2020, and, finally, through June 12, 2020. Plaintiffs had no reason to believe that Governor Whitmer would lift the Stay-at-Home Order on June 1, 2020, or that she would not further extend the order past June 12, 2020. Once the Stay-at-Home Order

---

[1]Notwithstanding language regarding the inapplicability of the orders to constitutionally-protected activities, which, for reasons set forth below, did not necessarily protect petition circulation activities.

3

was lifted, Plaintiffs could not simply "flip the switch" and immediately begin circulating petitions. After this date, Plaintiffs not only had to draft their proposals, but also establish the campaign infrastructure necessary to successfully circulate petitions. Under the circumstances, Plaintiffs did not demonstrate a lack of diligence, and undertook their campaign-related tasks with due speed.

Moreover, this case is distinguishable from those that Defendants cite in their respective response briefs. Defendants rely heavily on the Sixth Circuit's decision in *Thompson v. DeWine*, 959 F.3d 804 (6th Cir. 2020). The Sixth Circuit differentiated *Thompson* from *Esshaki* largely based upon the fact that Ohio "made clear that its stay-at-home restrictions did not apply to "gatherings for the purpose of the expression of First Amendment protected speech," while Michigan's Stay-at-Home Order did not, and also because Ohio had begun to lift its stay-at-home restrictions during the relevant timeframe, while Michigan's Stay-at-Home Order remained in effect through the signature submission deadline in *Esshaki*. *Id*. at 809-10.

Here, the circumstances are sufficiently dissimilar to distinguish the holding in *Thompson*. While Governor Whitmer's Stay-at-Home Order had been lifted by the time Plaintiffs began circulating their petitions, significant restrictions remained. Executive Order No. 2020-110 effectively foreclosed large public events – where the majority of signatures are typically gathered – from occurring, as it limited

4

indoor gatherings to no more than 10 people and outdoor gatherings to a maximum of 100 people, while still requiring social distancing measures. Executive Order 2020-110 did include broad language that "nothing in this order shall be taken to abridge protections guaranteed by the state or federal constitution under these emergency circumstances." However, the language in Executive Order No. 2020-110 is insufficient to require that this Court find that intermediate scrutiny is applicable in the instant case for at least two reasons.

First, while the Ohio order specifically exempted initiatory petition circulators, the Michigan language is far more vague. To this end, the State issued a Frequently Asked Question (the "FAQ") on the State's website that purportedly allows such conduct in Michigan. The FAQ demonstrates that the State effectively foreclosed all signature gathering activities:

> Persons may engage in expressive activities protected by the First Amendment within the State of Michigan, but must adhere to social distancing measures recommended by the Centers for Disease Control and Prevention, including remaining at least six feet from people from outside the person's household.[2]

While the FAQ makes clear that an "expressive activit[y] protected by the First Amendment," presumably including petition circulating, was exempt from the limitations on outdoor activity, it still mandated that individuals doing so "must

---

[2]Executive Order 2020-110 FAQs, available at https://www.michigan.gov/coronavirus/0,9753,7-406-98178_98455-530654--,00.html

5

adhere to social distancing measures…" Consequently, the FAQ, in conjunction with Executive Order 2020-110, rendered signature gathering virtually impossible, as it is entirely impracticable for a signature gatherer to "remain[] at least six feet from people from outside the person's household" while having to go door-to-door or approach individuals on the street to sign petitions. As Executive Order 2020-110 effectively acted as a bar to signature gathering, this case should be viewed under a paradigm closer to the strict scrutiny analyzed by *Esshaki* and *SawariMedia* than to the intermediate scrutiny utilized in *Thompson*.

Additionally, the Sixth Circuit's observation in *Thompson* that, "[t]here's no reason that Plaintiffs can't advertise their initiatives within the bounds of our current situation, such as through social or traditional media inviting interested electors to contact them and bring the petitions to the electors' homes to sign," *Thompson*, 959 F.3d at 810, is unavailing to the case at bar. First, "bring[ing] the petitions to the electors' homes to sign" similarly runs afoul of Executive Order No. 2020-110, as explained in the FAQ, as handing a petition to an elector necessarily involves violating six foot social distancing requirements. Second, while engaging in social media campaigns may be viable options for statewide initiatives, they are cost-prohibitive for local ballot question committees, and less effective due to the small target population of registered electors.

The Defendants' reliance on *Kishore v. Whitmer*, No. 20-11605, 2020 WL 3819125 (E.D. Mich. July 8, 2020) is also misplaced. In that case, the plaintiffs had not even "prepared a qualifying petition that could be used to gather signatures in support of *Kishore*'s candidacy" or gathered a single signature. *Id.* at *10. Here, in direct contrast to that case, Plaintiffs each prepared local ballot question petitions; drafted complex proposed ordinances; sought review of their petitions, where applicable; and obtained numerous signatures from electors.

Under the circumstances, Plaintiffs in this case have been diligent in preparing their petitions and circulating the same. As such, the lack of diligence that Judge Cox used as a justification to apply intermediate scrutiny in *Kishore* is entirely lacking in the current matter.

For all of these reasons, this Court should find that the burden on Plaintiffs was severe in that it "excludes or virtually excludes [Plaintiffs] from the ballot," and that strict scrutiny applies in the current case.

Respectfully submitted,

Dated:  August 24, 2020

/s/ Douglas E. Mains
Douglas E. Mains (P75351)
Honigman LLP
222 North Washington Square, Suite 400
Lansing, MI 48933
(517) 377-0732
dmains@honigman.com

*Attorneys for Plaintiffs*

7

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 24, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record in this matter registered with the ECF system.

/s/ Douglas E. Mains